IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Randall D. Allen, ) | Civil Action No. 3:10-1304-MBS |
| ) | |
| Plaintiff, ) | |
| ) | O R D E R |
| vs. ) | |
| ) | |
| AutoZone, Inc., ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter came before the court on October 5, 2011 for a hearing on Defendant AutoZone, Inc.'s ("AutoZone's") motion for summary judgment  (ECF No. 29) and a  joint motion to stay all pending deadlines.[1] (ECF No. 36.) After reviewing the parties' memoranda and hearing the arguments of counsel, AutoZone's motion for summary judgment is GRANTED.

I.  Background

This case arises out of Plaintiff Randall Allen's ("Allen") employment at AutoZone's store located in Lexington, South Carolina, and Allen's subsequent arrest for breach of trust in 2008. (ECF No. 1 ¶ 2.)  Allen worked at AutoZone as a  commercial specialist. (ECF No. 29-4,  pp. 79, 92.)  The commercial specialist is the employee at the store responsible for commercial accounts. (ECF No. 29-4, pp. 94-96, 112.) Commercial customers are customers such as dealerships and maintenance shops. (ECF No. 29-2 ¶5.) Duties of the commercial specialist include receiving and preparing commercial orders, maintaining the commercial department paperwork, reconciling commercial department transactions and responsibility for outside vendor purchases ("outside buys"). (ECF No. 29-2 at ¶ 6.) Outside buys occur when a commercial customer calls to order a

---

[1]The court granted the joint motion to stay at the conclusion of the hearing.

product that AutoZone does not have in stock. Id.  If the product requested is out of stock, the commercial specialist can purchase the product with AutoZone store funds from a third party vendor in order to resell that part to AutoZone's customer. (ECF No. 29-2 ¶ 6.) The commercial specialist must maintain paperwork for outside buys because cash from the store register is used to purchase the outside buys.  (ECF No. 29-1 ¶¶ 10, 11.)  Among the paperwork generated for the outside buy is a purchase order that shows the part being purchased, the customer who requested the part, and the third party vendor from whom the part will be purchased. Id.

On September 26, 2007, Vince Reidy ("Reidy"), the Loss Prevention manager for AutoZone's South Carolina region, received a report showing an unusually high number of outside buy purchases from the Lexington, South Carolina AutoZone ("Lexington AutoZone") commercial department. (ECF No. 29-2 ¶¶ 1,2, and 5.)  On October 11, 2007, Reidy received the annual inventory report showing a $93,259 merchandise loss for the year at the Lexington AutoZone store. (ECF No. 29-2 ¶ 13.) This loss was 5.58% of all inventories for the year. (ECF No. 29-2 ¶ 13.)

AutoZone's District Manager David Bradley ("Bradley") and Reidy went to the Lexington store to review the commercial department's outside buy paperwork and discovered the paperwork was missing. (ECF No. 29-2 ¶14.) Reidy questioned Allen about the missing paperwork but Allen had no explanation. (ECF No. 29-2 ¶15 and ECF No. 29-4 p.179 ¶¶ 13-15.)  As part of his investigation, Reidy printed duplicate copies of the Lexington AutoZone's invoices and receipts for its outside buy transactions.  (ECF No. 29-2 ¶ 17.)  Reidy and Bradley also contacted vendors listed on the receipts and invoices to verify that the outside buy purchases listed on the invoices were made. (ECF No. 29-2¶ 18.) Vendors that were contacted indicated that none of the outside

buy purchases occurred. Id.  Reidy suspected potential fraud and identified Allen as the subject

of his investigation. (ECF No. 29-2 ¶¶ 27, 29.)

On November 16, 2007,  Reidy turned over the results of his investigation to the Town

of Lexington Police Department and Detective Scott Gugel was assigned to the case. (ECF No.

29-1 ¶ 33.)  Detective Gugel conducted his own independent investigation, which included

interviewing Allen and Reidy. (ECF No. 30-2 ¶¶ 7,15.)  Detective Gugel also received signed

statements from three of AutoZone's third party vendors stating that the Lexington AutoZone had

not made the outside purchases at issue. (ECF No. 30-2 ¶¶ 10,18.)

On February 27, 2008 Judge John Rakowsky signed a warrant for Allen's arrest. (ECF No.

30-2 ¶ 19.)  Detective Gugel advised Allen a warrant had been issued, and Allen turned himself in

at the Lexington Police Department. (ECF No. 30-2 ¶ 20.)  The Solicitor's Office dismissed the case

on June 26, 2009 due to insufficient evidence. (ECF No. 30-2 ¶ 21.)

On January 14, 2010, Allen filed this action in the Lexington County Court of Common

Pleas, alleging causes of action for false imprisonment, malicious prosecution, defamation, and

abuse of process.[2] (ECF No.1.)  AutoZone removed the case to this court on May 19, 2010 and

subsequently filed its motion for summary judgment. (ECF Nos.1 and 29.)  Allen agreed to the

dismissal of his causes of action for false imprisonment and defamation in his memorandum

opposing AutoZone's motion for summary judgment.[3] (ECF No. 32.)

---

[2]Allen initially identified Autozone, Inc. and Autozone Store Number 1021 as Defendants.
The Honorable Matthew J. Judge Perry dismissed Autozone Store Number 1021 in a Text Order
dated July 14, 2010.

[3]Allen's counsel confirmed that Allen was not pursuing his causes of action for defamation
and false imprisonment at the October 5, 2011 hearing.

3:10-cv-01304-MBS    Date Filed 12/08/11    Entry Number 41    Page 4 of 7

## II. Standard of Review

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial. Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289 (1968)). In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123–24 (4th Cir.1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed.R.Civ.P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

## III. Discussion

### A. Malicious Prosecution

Allen's third cause of action alleges that AutoZone maliciously instituted and pursued criminal charges against him that were false and without probable cause. (ECF No. 1 ¶ 16.) In order to maintain a cause of action for malicious prosecution, Allen must establish: (1) the institution or continuation of original judicial proceedings; (2) by or at the instance of the Defendant; (3) termination of such proceedings in Plaintiff's favor; (4) malice in instituting such proceedings; (5) lack of probable cause; and (6) resulting injury or damage. Law v. S.C. Dep't of Corr., 629 S.E.2d 642, 648 (S.C. 2006).

In this case, the issue turns on whether AutoZone possessed probable cause to procure the

institution of criminal proceedings.   Allen carries the burden of showing AutoZone lacked

probable cause. Id.  Probable cause  means the  existence of such facts and circumstances as would

excite the belief in a reasonable mind, acting on the facts within the knowledge of the prosecutor,

that the person charged was guilty of the crime for which he was prosecuted. China v. Seaboard

Air Line Ry., 92 S.E. 335, 337 (S.C. 1917). "Only the facts and circumstances which were known

or should have been known to the prosecuting witness at the time of institution of prosecution

should be considered." Crowell v. Herring, 392 S.E.2d 464, 468 (S.C. App. 1990).   The facts

"must be regarded from the point of view of the party prosecuting; the question is not what the

actual facts were, but what he honestly believed them to be."

In this matter, Reidy, on behalf of AutoZone, contacted the Town of Lexington Police

Department only after he had acquired the following information from his investigation of the

Lexington AutoZone:

1.     On or about September 26, 2007, Reidy received a report from the divisional Loss Prevention office regarding AutoZone's Lexington, South Carolina store. The report flagged the Lexington, South Carolina commercial department for investigation due to an unusually high number of recent outside buy purchases made by the store's commercial department. (ECF No. 29-2 ¶5.)

2.     Allen was the Commercial Specialist at the Lexington AutoZone store flagged by the report. (ECF No. 29-2¶ 14.)

3.     As Commercial Specialist at the Lexington AutoZone store, Allen was responsible for the store's commercial department and outside-buy transactions. (ECF No. 29-2 ¶10.)

4.     The annual inventory report issued on October 11, 2007 showed that the Lexington AutoZone store had $93,259 in merchandise loss for the year. The Lexington AutoZone store's loss was 5.58% of all inventories for the year. Out of AutoZone's 3953 stores that reported inventory results during that fiscal year, the Lexington store ranked in the top 2% nationally for high shrink. (ECF No. 29-2 ¶13.)

5.    When Reidy visited the Lexington AutoZone store to investigate, the commercial department's outside-buy paperwork was missing from the store files. The files contained no paperwork for the outside-buy transactions at issue. This was highly unusual given the importance of the paperwork and the requirements under company policy. (ECF No. 29-2 ¶14.)

6.    Allen was responsible for maintaining the paperwork for outside buys at the Lexington AutoZone store where the paperwork was missing. Under company policy, the Commercial Specialist should properly reconcile outside buys and file the paperwork in the appropriate period box at the store. Allen offered no explanation about the missing paperwork when questioned by Reidy. (ECF No. 29-2 ¶ 15.)

When Reidy turned the results of his investigation over to the Town of Lexington Police Department, he believed the information he had gathered pointed to potential fraud involving Plaintiff.   (ECF No. 29-2 ¶¶ 31, 32.)    Allen has submitted no evidence that indicates why AutoZone should not have suspected potential criminal activity.  In addition, Allen conceded when questioned during his deposition that the high number of outside buys, the high shrink number for the Lexington AutoZone, and the missing paper work were all suspicious.  (ECF No 29-4 p. 46, lines 3-5; p. 47 lines 13-5; p. 46, lines 6-21.)  The court concludes that Allen has failed to come forth with facts that show that AutoZone lacked probable cause to believe that Allen was responsible for the potential fraud at the time Reidy turned over the results of his investigation to the Town of Lexington Police Department. Crowell v. Herring, 392 S.E.2d at 468. Moreover, Detective Gugel's investigation and the Judge's finding of probable cause to issue an arrest warrant support the conclusion that AutoZone had probable cause to suspect criminal activity. Allen's malicious prosecution claim fails as a matter of law.

B.  Abuse of Process

Allen alleges that AutoZone abused the criminal process for the purpose of obtaining money from him. (ECF No. 1 ¶¶ 21-24.)  Under South Carolina law, in order to prevail on an abuse of process claim, a plaintiff must establish "1) an ulterior purpose, and 2) a willful act in the

use of the process not proper in the conduct of the proceeding." <u>Food Lion, Inc. v. United Food</u>
<u>& Commercial Workers Int'l Union</u>, 567 S.E.2d 251, 253 (S.C. App. 2002). "An ulterior purpose
exists if the process is used to gain an objective not legitimate in the use of the process." <u>Id</u>. Thus,
no liability exists "where the defendant has done nothing more than carry out the process to its
authorized conclusion, even though with bad intentions." <u>Hainer v. Am. Med. Int'l, Inc</u>., 492
S.E.2d 103, 107 (S.C. 1997).

Here, Allen has not come forth with evidence that indicates AutoZone had an ulterior
purpose for reporting the results of its investigation to the police. Allen admitted in his deposition
that AutoZone had not threatened or demanded money from him. (ECF No. 29-4 p.238.)
Detective Gugel also stated that AutoZone did not ask him to demand money from Allen (ECF No.
30-2 ¶ 26.) Finally, Allen has failed to come forth with facts indicating AutoZone's actions were
improper in the "regular conduct of the proceedings." The unrefuted evidence establishes Reidy's
actions and statements were typical and appropriate for his role in investigating the matter at the
Lexington AutoZone. Allen's abuse of process claim fails as a matter of law.

IV. Conclusion

For the reasons stated herein, AutoZone's motion for summary judgment is GRANTED.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
United States District Judge

Columbia, South Carolina
December 8, 2011

7